UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| SHEA ARMSTRONG and SAMUEL CALDWELL, on behalf of themselves and all others similarly situated, | : : : : | Civil Action No. 23-3046 (JXN) (JBC) |
| Plaintiffs, | : : | OPINION |
| v. | : : : | |
| BMW OF NORTH AMERICA, LLC, and BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, | : : : : | |
| Defendants. | : : | |

**NEALS**, District Judge:

This matter comes before the Court on Defendant BMW of North America, LLC's ("Defendant's") motion to dismiss Plaintiff Shea Armstrong ("Armstrong") and Samuel Caldwell's ("Caldwell") (together, the "Plaintiffs'") first amended class action complaint (ECF No. 21) (the "Class Action Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 28). Plaintiffs opposed (ECF No. 31), and Defendant replied. (ECF No. 36). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule. 78.1(b). For the reasons set forth below, Defendant's motion to dismiss (ECF No. 28) is **GRANTED**, and the Class Action Complaint (ECF No. 21) is **DISMISSED** without prejudice. Plaintiff has 30 days to file an amended complaint that is consistent with this Opinion.

I.     **BACKGROUND AND PROCEDURAL HISTORY**

This is an action arises from an alleged "latent defect found" in certain BMW vehicles (the "Class Vehicles"). (CAC ¶ 1).[1] According to Plaintiffs, the Class Vehicles lack a "properly functioning engine cooling system" and Defendant failed to disclose that the Class Vehicles contained "a defectively designed and/or manufactured coolant line" that "causes it to prematurely fail when exposed to normal engine operating temperatures." (*Id.* ¶¶ 2, 56). This alleged defect causes the coolant line "to fracture and leak coolant," resulting in "Class Vehicles to overheat, resulting in stalling or sudden and catastrophic engine failure . . . ." (*Id.* ¶ 2).

On October 4, 2020, Armstrong "purchased a certified pre-owned 2017 530i" BMW from a "BMW dealership located in Glendale, California." (*Id.* ¶ 18). In August 2021, Armstrong "noticed that engine coolant was leaking from his engine compartment and that his dashboard indicated his vehicle was low on engine coolant." (*Id.* ¶ 21). On August 24, 2021, Armstrong "brought his vehicle to BMW of Buena Park in Buena Park, California" who "diagnosed the issue and covered the repairs under warranty." (*Id.* ¶ 22).

In November 2022, Armstrong "observed that his dashboard indicated his vehicle as again low on engine coolant . . . ." (*Id.* ¶ 23). Armstrong "brought the vehicle to BMW of Buena Park" who "diagnosed the issue as a coolant line failure." (*Id.* ¶ 24). BMW of Buena Park informed Armstrong that "he would be required to pay for the necessary repairs because he was no longer within the warranty period, and that the repairs would cost approximately $2,000." (*Ibid.*). Armstrong paid for the repairs. (*Id.* ¶ 24).

In May 2023, Armstrong "observed that his dashboard indicated his vehicle was again low on engine coolant." (*Id.* ¶25). Armstrong brought the vehicle to BMW of Buena Park who

---

[1] The following factual allegations are taken from the Amended Complaint that are accepted as true. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

"diagnosed the issue as a coolant line failure" and "again informed [] [him] [that] he would be required to pay for the necessary repairs because he was no longer within the warranty period . . . ." (*Id.* ¶ 26).

In October 2022, Caldwell "purchased a certified pre-owned 2019 BMW 540i" from "BMW of Tampa," located in Tampa, Florida. (*Id.* ¶ 30). On March 15, 2023, Caldwell "observed that his dashboard indicated his vehicle was low on engine coolant." (*Id.* ¶ 34). Caldwell filled the vehicle with engine coolant. (*Ibid.*). "[T]wo days later," Caldwell "observed that his dashboard indicated his vehicle was again low on engine coolant" and once more "filled up his vehicle with coolant." (*Id.* ¶ 35).

On March 20, 2023, Caldwell "observed that his dashboard indicated his vehicle was again low on engine coolant" and "noticed a coolant leak in both his garage and parking spot at work, and smelled an odor of coolant." (*Id.* ¶ 36). Caldwell "called BMW of Tampa regarding the coolant issues" and was "told to bring his vehicle in if he experienced the issue again." (*Ibid.*).

On April 20, 2023, Caldwell "brought his vehicle to BMW of Tampa" who "diagnosed the issue as a coolant line failure and noted that coolant line failure was a known issue in BMW vehicles." (*Id.* ¶ 38). "BMW of Tampa informed Caldwell" that "the coolant lines cannot withstand the heat they are subjected to during normal operation" and that "the necessary repairs would cost approximately $1,700." (*Ibid.*). Caldwell paid for the repairs. (*Ibid.*).

Caldwell "contact[ed] BMW's customer service division to request a goodwill reimbursement" and left several messages that were unreturned. (*Id.* ¶ 39). On September 28, 2023, Caldwell "provided Defendants with written notice of their violations of the Florida Deceptive and Unfair Trade Practices Act, as well as for their breaches of express and implied warranties." (*Id.* ¶ 40).

3

Plaintiffs alleges causes of action under: (i) California's state laws (Counts One to Three); (ii) breach of express and implied warranty (Counts Four to Five and Seven to Eight); (iii) Florida state law (Count Six); (iv) the Magnuson-Moss Warranty Act (Count Nine); and (v) common law fraud and unjust enrichment (Counts Ten to Eleven).

On November 14, 2023, Defendant filed the motion to dismiss. On December 18, 2023, Plaintiffs opposed. On January 17, 2024, Defendant replied. This matter is ripe for consideration.

## II.     LEGAL STANDARD

Rule 8 requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief" and provide the defendant with "fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotations and ellipses omitted). On a Rule 12(b)(6) motion, the "facts alleged must be taken as true" and dismissal is not appropriate where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). A complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a complaint is sufficient, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must "assume the[] veracity" of well-pleaded factual allegations and ascertain whether they plausibly "give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

4

**III.      DISCUSSION**

　　**A.      The Class Action Complaint is Not a "Group Pleading"**

As a threshold matter, Defendant argues that the Class Action Complaint improperly groups Defendants together in violation of Federal Rules of Civil Procedure 8 and 9(b).  ((ECF No. 28-1) ("Def.'s Br.") at 18-21).[2]  In opposition, Plaintiffs assert that the Class Action Complaint is not an impermissible group pleading because it contains facts as to the "roles" and actions of each defendant.  ((ECF No. 31) ("Pls.' Opp") at 17-21).  The Court agrees with Plaintiffs.

"When multiple defendants are involved, the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant." *MDNet, Inc. v. Pharmacia Corp.*, 147 F.App'x 239, 245 (3d Cir. 2005) (citation omitted).  However, because Plaintiffs are not expected to know at the motion to dismiss stage the "exact corporate structure and degree of each defendant's involvement[,]" the level of specificity required under Rules 8 and 9(b) is relaxed. *See McMahon v. Volkswagen Aktiengesellschaft*, No. 22-5137, 2023 WL 4045156, *10 (D.N.J. June 16, 2023) (internal quotation marks, brackets, and citation omitted).

To meet the Rule 9(b) standard, "plaintiff[s] need not distinguish the specific roles that each entity played in the fraudulent concealment . . . ." *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 226 (D.N.J. 2020) (citation omitted).  Importantly, referring to defendants that are "joined through the same corporate structure and act as agents and/or alter egos of each other" as one is not problematic when the defendants are not "left in the dark" about each other's actions. *See Ponzio* 447 F. Supp. 3d at 226 (citation omitted).

Here, Defendants argue that the Class Action Complaint violates Rule 8 and 9(b)'s pleading requirements by referring only to "BMW" (defined to include both Defendants) or

---

[2] The Court refers to the ECF page numbers.

"Defendants" in each allegation. (Def.'s Br. at 20). However, neither Defendant is "in the dark" about the actions of the other. *McMahon*, 2023 WL 4045156 at *10 (citation omitted). Defendant Bayerische Motoren Werke Aktiengesellschaft ("BMW-GER") is the parent company of Defendant. (CAC ¶ 44). Furthermore, Plaintiffs sufficiently raise allegations common to both Defendants ("[D]esign, manufacture, distribution, service, repair, modification, installation, and decisions regarding the Class Vehicles, as it relates to the Defect, were performed exclusively by Defendants BMW-NA and BMW-GER"). (*Id.* ¶ 48). Accordingly, Defendants' motion to dismiss as to impermissible "group pleading" is denied.

B.     **The Class Action Complaint Does Not Sufficiently Allege a Defect**

Defendant argues that the Class Action Complaint should be dismissed for failure to allege a defect. (Def.'s Br. at 21-24). Plaintiffs oppose. (Pls.' Opp. at 21-25). Because the Class Action Complaint fails to allege a plausible defect, it is dismissed in its entirety.

Authority is split as to the level of factual allegations required to plausibly plead a defect. In following the reasoning in *DeCoteau v. FCA US LLC*, No. 15-20, 2015 WL 6951296, *1 (E.D. Cal. Nov. 10, 2015), the court in *Wesley v. Samsung Elecs. Am., Inc.* held that the "level of specificity required to state a defect claim directly correlate to the complexity of the machinery in question . . . ." No. 20-18629, 2023 WL 3496024, *3 (D.N.J. May 17, 2023) (quoting *DeCoteau*, 2015 WL 6951296, at *3).

In *DeCoteau*, the court reasoned that although plaintiffs are not expected "to plead [all] the mechanical details" of the defect, more detailed factual allegations are required when there are multiple components or parts in a system that may be defective. 2015 WL 6951296, *3 (E.D. Cal. No. 10, 2015). In other words, it is not enough to allege injuries or "symptoms of a defect" that may lead to the conclusion that the defect is the cause. *See id*. In that case, the alleged defect

involved the vehicles' transmissions.  Specifically, the court held that the Federal Rules of Civil Procedure require greater specificity to allege a defect, because transmissions "are complicated systems that demand more detailed factual allegations in order to identify a plausible defect." *DeCoteau*, 2015 WL 6951296, at *3.  To that end, plaintiffs "must allege the specific facts that plausibly support their belief in the existence of a defect for which Defendant is responsible in order to give Defendant sufficient notice to defend against their claims[,]" and "plausibly connect the existence of the alleged defect to the injuries they claim to have suffered." *Id.* at *3.

Recently, this court held that alleging the defect, along with the effects of the defect, is sufficient under Rule 8's liberal pleading standard.  *See Williams v. Samsung Elecs. Am., Inc.*, No. 23-989, 2024 WL 1328133, *7 (D.N.J. Mar. 28, 2024).  Specifically, the court found the complaint to be sufficient because it "identifies (1) the parts across the [class products] alleged to be defective, (2) how these parts interplay in [the class products] stages of overheating and damage, and (3) examples of how the defect allegedly manifests, including rendering the [class products] unusable." *Id*.  This Court applies the standard set forth in *Wesley* and *DeCoteau*.

In the Class Action Complaint, Plaintiffs allege that the "coolant in the Class Vehicles is circulated is a closed, pressurized loop" and "[t]hus, *any defect in the parts* that comprise the [cooling] system that allows coolant to leak will cause the Class Vehicles to run out of coolant and prevent the Class Vehicles' engines from cooling appropriately and operating at a safe temperature." (CAC ¶ 62) (emphasis added).  Plaintiffs further allege that "the coolant lines in the Class Vehicles suffer from *one or more design and/or manufacturing defects* that causes them to prematurely wear at an accelerated rate because they are incapable of withstanding the high temperatures within the engine." (*Id.* ¶ 64) (emphasis added).[3]  As a result of the alleged defect

---

[3] In support of the allegation that "BMW has acknowledged that the coolant lines in certain models and model years of the Class Vehicles 'cannot handle excessive high temperatures over the lifetime of the part,'" (CAC ¶ 64), Plaintiffs

7

or defects in the parts that comprise the cooling system, coolant will "leak out of the closed system." (*Id.* ¶ 63). However, while Plaintiffs allege the symptoms of a defective coolant line (i.e., leaking coolant), they fail to plausibly allege what is actually defective in the coolant line. *DeCoteau*, 2015 WL 6951296 at *3 ("Plaintiffs do not . . . allege actual facts that make the existence of either a design or manufacturing defect plausible.").

Plaintiffs' failure to plausibly allege a defect necessitates dismissal. Because Plaintiffs base their claims on the "existence of a defect[,]" the Court need not "consider Defendant's other arguments in support of" the motion to dismiss. *Id*. at *4. Accordingly, the motion to dismiss is granted and the Class Action Complaint is dismissed without prejudice.

## IV.     CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (ECF No. 28) is **GRANTED**. An appropriate Order accompanies this Opinion.

DATED: 6/18/2024

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge

---

cite to a Service Information Bulletin ("SIB") issued by BMW of North America, Inc. in July 2022. (ECF No. 1-1). The SIB applies to certain 2, 3, and 4 series BMWs produced between April 2015 to October 2018. (*Ibid.*). Importantly, the SIB indicates that a "quick disconnect coupling on the cylinder head coolant vent line could break the cylinder head" because the "coolant line cannot handle excessive high temperatures over the lifetime of the part" and recommends "replacing [the] cylinder head-expansion tank coolant line." (*Ibid.*).

It is unclear to the extent that Plaintiffs are offering the SIB in support of the alleged defect, as the SIB does not apply to Plaintiffs Armstrong and Caldwell, who own series 5 vehicles, and does not apply to all Class Vehicles. Nevertheless, the SIB identifies a part, the "hose of cylinder head expansion tank," that would cause coolant to leak from the engine if it were to prematurely wear due to excessive temperatures.